UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


BRADLEY R. LAMB,

       Petitioner,

v.                                      Case No. 3:17-cv-300-J-34PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____


## ORDER

### I. Status

      Petitioner Bradley Lamb, an inmate of the Florida penal system, initiated this action on March 7, 2017,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Lamb challenges a 2007 state court (Duval County, Florida) judgment of conviction for three counts of promoting a sexual performance by a child, lewd and lascivious exhibition, and soliciting a child by computer. Lamb raises seven grounds for relief. See Petition at 5-11.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer to Petition for Writ of Habeas Corpus (Response; Doc. 18) with exhibits (Resp. Ex.). Lamb filed a brief in reply. See Reply to Answer to Petition for Writ of Habeas Corpus (Reply; Doc. 30). This case is ripe for review.

---

      [1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
      [2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On May 30, 2006, the State of Florida (State) charged Lamb with ten counts of promoting a sexual performance by a child (counts one through ten), ten counts of transmission of pornography by electronic device (counts eleven through twenty), three counts of lewd or lascivious exhibition (counts twenty-one through twenty-three), and one count of soliciting a child via computer (count twenty-four). Resp. Ex. A at 27-30. On July 23, 2007, Lamb entered a negotiated guilty plea to counts one, three, four, twenty-three, and twenty-four in exchange for the State dropping the remaining counts. Id. at 46-49. Pursuant to the plea agreement, Lamb agreed to a sentencing range of five to fifteen years. Id. On September 18, 2007, the circuit court sentenced Lamb to a term of incarceration of fifteen years in prison as to counts one, three, four, and twenty-three, with each count running concurrently. Id. at 110-17. As to count twenty-four, the circuit court imposed a term of probation of five years to run consecutively to his prison sentences. Id. at 111, 121-25.

On October 15, 2007, Lamb filed a notice appealing his conviction and sentence with Florida's First District Court of Appeal. Id. at 126-40. During the pendency of his direct appeal, Lamb filed a motion to correct a sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2) (First Rule 3.800(b)(2) Motion), in which he argued the circuit court illegally imposed sex offender probation for count twenty-four. Resp. Ex. D at 1-3. On June 2, 2008, the circuit court granted the First Rule 3.800(b)(2) Motion and imposed regular probation as to count twenty-four. Id. at 11-17. On October 1, 2008, Lamb filed another motion to correct a sentencing error pursuant to Rule 3.800(b)(2) (Second Rule 3.800(b)(2) Motion), alleging that his sentences were illegal because a

different judge sentenced him rather than the judge who accepted his plea. Resp. Ex. F at 1-3. The circuit court denied the Second Rule 3.800(b)(2) Motion. Id. at 4-7. On June 25, 2008, the State filed a motion to vacate the order granting Lamb's First Rule 3.800(b)(2) Motion. Resp. Ex. H at 10-13. Following a hearing, the circuit court clarified its order granting the First Rule 3.800(b)(2) Motion to reflect that it removed the designation of "sexual offender" from the probation order but the terms and conditions of his probation as agreed to in the plea agreement still applied, including the requirement that Lamb register as a sexual offender. Id. at 20, 38-39.

On January 7, 2010, still during the pendency of his direct appeal, Lamb filed a third motion to correct a sentencing error pursuant to Rule 3.800(b)(2) (Third Rule 3.800(b)(2) Motion), in which he argued the circuit court improperly imposed a $20 surcharge and wrongly imposed special conditions of probation that it did not orally pronounce. Resp. Ex. K at 1-13. On February 12, 2010, the circuit court granted in part and denied in part the Third Rule 3.800(b)(2) Motion. Id. at 31-36. The circuit court struck the $20 surcharge and condition eleven of Lamb's probation. Id. On April 1, 2010, Lamb filed another Rule 3.800(b)(2) Motion (Fourth Rule 3.800(b)(2) Motion), in which he argued the circuit court impermissibly altered his plea agreement. Resp. Ex. L1 at 1-7. On June 30, 2010, the circuit court denied Lamb's Fourth Rule 3.800(b)(2) Motion. Id. at 129-33.

On March 16, 2010, Lamb's appellate counsel filed an Anders[3] brief. Resp. Ex. V. Thereafter, Lamb filed a pro se initial brief in which he raised the following arguments: (1) the prosecutor profiled him as a pedophile; (2) the circuit court ignored mitigation

---

[3] Anders v. California, 386 U.S. 738 (1967).

evidence; (3) changes to his plea voided it; (4) re-imposing special conditions of his probation constituted double jeopardy; (5) the sentencing judge did not have jurisdiction as a successor judge; (6) the prosecutor did not have authority; and (7) the circuit court erred in denying a motion to disqualify. Resp. Exs. X; Y. On December 15, 2010, the First DCA per curiam affirmed the convictions and sentences without a written opinion and issued the Mandate on March 16, 2011. Resp. Ex. Z. Lamb filed a motion for rehearing, which the First DCA denied on February 28, 2011. Resp. Ex. AA.

On April 21, 2011, Lamb filed a motion to reduce his sentence pursuant to Florida Rule of Criminal Procedure 3.800(c), which the circuit court denied on May 10, 2011. Resp. Ex. BB. On October 17, 2011, Lamb filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. CC at 1-25. He raised the following claims in his Rule 3.850 Motion: (1) the prosecutor lacked authority to prosecute his case; (2) the State failed to timely prosecute him; (3) the circuit court lacked jurisdiction over his case; (4) he involuntarily entered his plea; (5) counsel was ineffective for failing to investigate and conduct an adversarial challenge to the State's case against him; and (6) the cumulative errors in the prosecution of his case prejudiced him. Id. The circuit court denied the Rule 3.850 Motion. Id. at 294-318. On September 7, 2016, the First DCA per curiam affirmed the denial of the motion without issuing a written opinion. Resp. Ex. FF. The First DCA denied Lamb's motion for rehearing on November 1, 2016, Resp. Ex. GG, and issued the Mandate on November 18, 2016. Resp. Ex. FF.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Lamb's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief

functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited

scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[4] <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting

---

[4] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1103 (2017).

Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175
L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298

(2017). Also, deferential review under § 2254(d) generally is limited to the record that was

before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster,

563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination

of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners

whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16

(2013). "Federal courts may grant habeas relief only when a state court blundered in a

manner so 'well understood and comprehended in existing law' and 'was so lacking in

justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834

F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a

"difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's

claims were adjudicated on the merits in the state courts, they must be evaluated under

28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas

action in federal court, a petitioner must exhaust all state court remedies that are available

for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state

remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to

the state's highest court, either on direct appeal or on collateral review. Castille v.

Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim,

"state prisoners must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the """opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[5] supra, at 747–748, 111 S. Ct. 2546; Sykes,[6] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other

---

[5] Coleman v. Thompson, 501 U.S. 722 (1991).
[6] Wainwright v. Sykes, 433 U.S. 72 (1977).

> requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

---

[7] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of

> reasonable professional assistance. Id., at 689, 104 S. Ct.
> 2052. The challenger's burden is to show "that counsel made
> errors so serious that counsel was not functioning as the
> 'counsel' guaranteed the defendant by the Sixth Amendment."
> Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a
> reasonable probability that, but for counsel's unprofessional
> errors, the result of the proceeding would have been different.
> A reasonable probability is a probability sufficient to
> undermine confidence in the outcome." Id., at 694, 104 S. Ct.
> 2052. It is not enough "to show that the errors had some
> conceivable effect on the outcome of the proceeding." Id., at
> 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as
> to deprive the defendant of a fair trial, a trial whose result is
> reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most
> deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But
> "[e]stablishing that a state court's application of Strickland was
> unreasonable under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review is
> doubly so." Id. (citations and quotation marks omitted). "The

> question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Lamb alleges that he did not have counsel at a resentencing hearing held on June 30, 2008. Petition at 5; Doc. 1-1 at 3-5. At the hearing, which the circuit court held during the pendency of Lamb's direct appeal and after granting Lamb's First Rule 3.800(b)(2) Motion, Lamb's trial counsel was present, but his appellate counsel was not, and his trial counsel informed Lamb that he was not there to represent him. Doc. 1-1 at 3. According to Lamb, "the state postconviction court never conducted a full and fair hearing why petitioner was unrepresented by trial counsel at the resentencing hearing on June 30, 2008 thus depriving petitioner of his right to effective counsel resulting in a presumption of prejudice and imposition of a sentence constituting double jeopardy." <u>Id.</u> at 5.

Respondents contend Lamb did not exhaust this claim. Response at 33-44. Lamb counters in his Reply that he did exhaust this claim because when his appellate counsel filed an Anders brief, the First DCA was obligated to conduct a de novo review of the entire proceeding, thus exhausting this claim. Reply at 10-11. Likewise, because he was not granted an evidentiary hearing on his "postconviction petition," the First DCA was also obligated to conduct a de novo review his case. Id. Lamb makes an alternative argument that cause exists to excuse any lack of exhaustion because his appellate counsel failed to properly brief this issue. Id. at 12-13. He further asserts prejudice is assumed here because he did not have counsel at a critical stage of the proceedings. Id.

In an unpublished opinion, the Eleventh Circuit found that an adjudication of a claim presented in an Anders brief can satisfy the exhaustion requirement. See Jenkins v. Bullard, 210 F. App'x 895, 898 (11th Cir. 2006). This is so, because the Anders procedure requires an appellate attorney to note possible appellate issues in the Anders brief and the appellate court is required to conduct an independent review of the record to determine if those possible issues are of arguable merit. Id. Thus, when an issue is raised in an Anders brief, it satisfies the exhaustion requirement under AEDPA. Id. Here, however, Lamb's appellate counsel did not raise this issue in the Anders brief. Resp. Ex. V. Likewise, Lamb did not raise this claim in either of his pro se initial briefs. Resp. Exs. X; Y. As such, Lamb did not exhaust this claim through his direct appeal proceedings. See Jenkins, 210 F. App'x at 898. The record further reflects that Lamb did not raise this claim in his Rule 3.850 Motion. Resp. Ex. CC at 1-25. Therefore, neither the circuit court nor the First DCA was given an opportunity to review the claim.

Concerning Lamb's contention that cause and prejudice exists to overcome this procedural default, "a claim for ineffective assistance of counsel, if both exhausted and not procedurally defaulted, may constitute cause." Henry v. Warden, Ga. Diag. Prison, 750 F.3d 1226, 1230 (11th Cir. 2014); see also Carrier, 477 U.S. at 488; Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing Edwards v. Carpenter, 529 U.S. 446, 451 (2000)) ("An attorney's constitutional ineffectiveness in failing to preserve a claim for review in state court may constitute 'cause' to excuse a procedural default."). But the petitioner must first present his or her ineffective assistance claim to the state courts as an independent claim before he or she may use it to establish cause to excuse the procedural default of another claim. Carrier, 477 U.S. at 488; see also Henderson v. Campbell, 353 F.3d 880, 896 n.22 (11th Cir. 2003). If the secondary ineffective assistance claim is itself procedurally defaulted, the "procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself." Henderson, 353 F.3d at 897 (citing Edwards, 529 U.S. at 446 and Carrier, 477 U.S. at 478).

The record reflects Lamb never raised a claim of ineffective assistance of appellate counsel. He has also not established cause or prejudice to excuse his failure to exhaust this claim of ineffective assistance of appellate counsel. As such, Lamb has failed to establish cause to excuse the procedural default of this claim. See id. Based on the above analysis, the claim in Ground One is unexhausted and, therefore, procedurally defaulted.

Nevertheless, even if this claim was exhausted, it is meritless. Pursuant to Florida Rule of Criminal Procedure 3.800(b)(2)(A), "[u]nless the motion expressly states that

appellate counsel will represent the movant in the trial court, trial counsel will represent the movant on the motion under Florida Rule of Appellate Procedure 9.140(d)." Rule 9.140(d) states that "[o]rders allowing withdrawal of counsel are conditional and counsel shall remain of record for the limited purpose of representing the defendant in the lower tribunal regarding any sentencing error the lower tribunal is authorized to address during the pendency of the direct appeal pursuant to Florida Rule of Criminal Procedure 3.800(b)(2)."

Here, Lamb's appellate attorney expressly stated in the First Rule 3.800(b)(2) Motion that he did not intend to represent Lamb in the trial court; instead, requesting that Lamb's trial attorney, Anthony Berry, Esq., represent him at the hearing on the First Rule 3.800(b)(2) Motion. Resp. Ex. D at 2. The record further reflects that Berry appeared on behalf of Lamb at the June 30, 2008 hearing. Resp. Ex. H at 34-35. Berry was not initially present at the hearing, with the prosecutor representing to the circuit court that this case was "Mr. Berry's case, but he indicates he doesn't think it's his case." Id. at 37. The circuit court then stated the following:

> Well, it was Mr. Berry's case. The order specifically says that Mr. Berry needs to handle this up until the time that this correction is done. So if you can round up Mr. Berry, if he's still out there, to bring him in and we can talk at side-bar.

Id. Similarly, the circuit court stated to Berry later in the hearing that "the Public Defender's motion specifically asks that trial counsel handle this part and that they would then handle the appeal part." Id. at 41. Berry affirmatively acknowledged this statement. Id. The circuit court then conducted the hearing with Berry as Lamb's counsel. Id. at 37-44. Although Berry seemed confused as to why he had to represent Lamb, Berry did in fact represent him throughout the hearing, even raising objections on Lamb's behalf and otherwise

voicing Lamb's concerns. Id. at 38-44. Regardless of Berry's initial misunderstanding of the law, the circuit court properly instructed Berry to represent Lamb at the hearing and Berry did so. Accordingly, through the application of Rules 3.800(b)(2)(A) and 9.140(d), Lamb was represented by counsel. As the record refutes this claim, Lamb is not entitled to the relief he seeks in Ground One.

**B. Ground Two**

In Ground Two, Lamb avers that his trial and appellate counsels were ineffective for allowing erroneous facts to be included in the record on appeal and appellate counsel failed to raise double jeopardy as an appellate issue. Petition at 7; Doc. 1-1 at 6. According to Lamb, the State misrepresented facts during his appeal, when it stated Lamb checked the probation terms on the plea form, which formed the basis for the state court to determine and Lamb's appellate counsel to argue that Lamb waived any double jeopardy violations when he entered his plea. Doc. 1-1 at 6. However, Lamb contends that in a June 7, 2010 filing, the State admitted that the circuit court, not Lamb, had altered the plea form. Id. According to Lamb, his trial counsel never informed his appellate counsel of the State's error. Id. Lamb maintains that "the [circuit] court's effort to impose probation [on] May 28, 2008[,] without petitioner present and again [on] June 30, 2008[,] constitutes double jeopardy" and his appellate counsel should have raised this issue on direct appeal. Id.

Respondents contend this claim is unexhausted because Lamb never presented these claims at any juncture in his state court proceedings. Response at 49-58. In his Reply, Lamb again asserts that appellate counsel's filing of an Anders brief exhausted this claim. Reply at 10-11. Similarly, he also argues this claim is exhausted because once

he appealed the denial of his Rule 3.850 Motion, Florida law obligated the First DCA to conduct a de novo review of the proceedings. Id.

Concerning Lamb's claims of ineffective assistance of appellate counsel, the Court finds Lamb has failed to exhaust this claim. Under Florida law, such claims must be brought via a petition for writ of habeas corpus filed with the appellate court. See Fla. R. App. P. 9.141(d)(3) ("Petitions alleging ineffective assistance of appellate counsel shall be filed in the court to which the appeal was taken"). Accordingly, Lamb's arguments that he exhausted this claim fails as a matter of law, because claims of ineffective assistance of appellate counsel cannot be raised on direct appeal or in a postconviction motion filed with the circuit court. See id. As Lamb has failed to demonstrate cause or prejudice or to allege his actual innocence, this claim as to appellate counsel is due to be denied as unexhausted.

Turning to Lamb's claim of ineffective assistance of counsel, Lamb could not have raised this claim on direct appeal. See Reynolds v. State, 99 So. 3d 459, 474 (Fla. 2012) (noting "claims of ineffective assistance of counsel generally are not cognizable on direct appeal and are properly raised in postconviction proceedings."). He also never raised this claim in his Rule 3.850 Motion. Resp. Ex. CC at 1-25. Lamb alleged in his Rule 3.850 Motion that his plea was involuntary, in part, because the circuit court altered the plea form. Id. at 14-17. In that claim he also briefly mentioned that his trial and appellate counsel "failed to challenge the erroneous statement in the State's June 25, 2008 motion." Id. at 16. However, Lamb never raised a standalone claim of ineffective assistance of trial counsel based on counsel's failure to alert appellate counsel of this issue or ensuring this issue was brought up on appeal. As such, this claim is unexhausted. Lamb has failed to

demonstrate cause or prejudice to overcome this procedural default, and, likewise, has not alleged he is actually innocent. Accordingly, this claim is also due to be denied as unexhausted.

Nevertheless, even if exhausted, these claims are without merit. The Fifth Amendment to the United States Constitution states, in pertinent part, that "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." This clause protects criminal defendants: (1) against a second prosecution for the same offense after acquittal; (2) from a second prosecution for the same offense after a conviction; and (3) against multiple punishments for the same offense. Jones v. Thomas, 491 U.S. 376, 380-81 (1989). The Court notes that under Florida law, where an original sentence is illegal or invalid, a judge can resentence a defendant without violating double jeopardy where that error is brought to the state court's attention via appeal or postconviction proceedings. See Allen v. State, 853 So. 2d 533, 536 (Fla. 5th DCA 2003) ("It does not offend double jeopardy principles to resentence a defendant to harsher terms when the original sentence was invalid, particularly when, as in the instant case, it is the defendant who brings his sentence into question."). Here, Lamb asserts that he was sentenced multiple times as to count twenty-four on May 28, 2008, and June 30, 2008. Doc. 1-1 at 6. As such, the Court will review the proceedings leading up to and after those dates.

At the July 23, 2007 hearing at which the circuit court accepted Lamb's guilty plea, Lamb's trial counsel stated, "[h]is sentence will be determined by the sentencing court, and I've explained to [Lamb] that Judge McCallum will be the sentencing judge, that [Judge Arnold is] just handling the admission of the plea." Resp. Ex. B at 154. Trial

counsel further represented in the presence of Lamb that "we will have a sentencing hearing in front of Judge McCallum to determine the appropriate time of sentence and conditions of probation." Id. at 154-55. Notably, trial counsel stated that "[t]he only two conditions of that probation is [sic] that he will be required to pay $2,000 in costs, and forfeit the real property." Id. at 154. During the actual plea colloquy between Lamb and the circuit court, trial counsel represented that "Judge McCallum will determine what conditions of probation should be imposed, based on the circumstances of this crime, and our plea." Id. at 160. The circuit court then spoke with Lamb, explaining:

> Mr. Lamb, what we were discussing is that Judge McCallum will have jurisdiction to determine what the requirements of your probation will be. That is, what general and special conditions, and there are certain conditions that must be imposed by law, do you understand that?

Id. at 161-62. Lamb replied that he understood. Id. at 162. Lamb also represented that he reviewed the guilty plea form, which included a list of yet unchecked conditions that could possibly be imposed. Id. Accordingly, by entering this negotiated plea, Lamb agreed to have the circuit court, specifically Judge McCallum, determine the conditions of his probation.

The sentencing hearing took place on September 18, 2007, before Judge McCallum. Resp. Ex. B at 171-281. In pronouncing the sentence, the circuit court stated, "As to count 24 I will adjudicate Mr. Lamb and place him on five years of probation consecutive to counts one through four and 23 with the conditions that were expressed in the plea, that he pay the $2000 and that he forfeit the property that was seized." Id. at 275-76. When the prosecutor asked if the circuit court had imposed sex offender probation with all of the conditions, the circuit court stated that it could not because the

plea colloquy indicated that the only conditions it could impose were the $2,000 payment and the forfeiture of the property seized during the investigation. Id. at 276-78. Both trial counsel and the prosecutor discussed their understanding of the plea, that the sentencing court would also determine the conditions of probation besides those two special conditions. Id. at 278-80. The circuit court then reviewed the plea form that included all the unchecked special conditions of probation, which led the court to believe, when viewed in light of the parties stipulation as to the plea agreement, that the parties intended for the circuit court to determine the conditions of probation. Id. Thereafter, the circuit court imposed sexual offender probation and physically checked the conditions of the probation listed on the plea form. Id. at 279-80. Accordingly, based on this record, Lamb agreed to have the circuit court determine the conditions of his probation and the circuit court, in determining those conditions, placed the check marks on the plea form.

As noted above, in his First Rule 3.800(b)(2) Motion, Lamb alleged that the circuit court illegally imposed sex offender probation because count twenty-four was not an enumerated offense for which sex offender probation could be ordered. Resp. Ex. D at 1-3. On May 29, 2008, the circuit court held a proceeding without requiring the attendance of the State, Lamb, or Lamb's attorney. Resp. Ex. E at 8-10. The circuit court granted the First Rule 3.800(b)(2) Motion, explaining:

> I will modify the sentence only to delete the term sexual offender probation so it will be the same conditions under the same terms but with no reference of that, so the sentence would reflect that correction. That was the negotiated agreement, it was just the wrong designation. I'll take care of getting an order for that.

Id. at 10. The Court entered its order granting the First Rule 3.800(b)(2) Motion on June 2, 2008. Resp. Ex. D at 11-17. On June 25, 2008, the State filed a motion requesting that

the circuit court vacate the order granting Lamb's First Rule 3.800(b)(2) Motion. Resp. Ex. H at 10-17. The circuit court held a hearing on the State's motion on June 30, 2008. Id. at 34-45. At that hearing, the circuit court stated:

> Essentially Mr. Lamb objected to the term of sexual offender designation on his probation. However, the terms and conditions of his probation were a negotiated agreement so although I am going to maintain those terms and conditions, I will remove the designation of sexual offender from the probation. So he is on probation. We will not call it sexual offender probation, but all the same conditions apply. So to the extent that his motion requested that designation be removed, I'm granting it. To the extent that he had requested that that probation be changed, I'm denying it.

Id. at 38-39. The circuit court further noted that "I'm essentially resentencing him to the same sentence I previously imposed, but removing the sexual offender designation from the probation, but the probation has the same terms." Id. at 40. Lamb, through Berry, objected to the imposition of these conditions. Id. at 40-41. On July 18, 2008, the circuit court entered an order memorializing its decision. Id. at 20.

The above record demonstrates that Lamb was not sentenced multiple times for the same offense. He pled guilty in this case and received probation as to count twenty-four. Lamb successfully challenged the imposition of sex offender probation and the circuit court corrected his sentence on May 28, 2008. The State challenged that order, and on June 30, 2008, the circuit court clarified its May 28, 2008 ruling. Accordingly, the initial invalid or illegal sentence allowed the circuit court to correct Lamb's probationary terms and conditions and the subsequent hearing on June 30, 2008, merely clarified that previous decision. As such, the Court finds that Lamb was not sentenced twice for the same offense such that double jeopardy occurred. See Allen, 853 So. 2d at 536. Having established no double jeopardy violation existed, Lamb's claims of ineffective appellate

and trial counsels fails because they cannot be deemed deficient for failing to raise meritless arguments or objections. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). For the above stated reasons, the relief on the claim in Ground Two is due to be denied.

## C. Ground Three

As Ground Three, Lamb asserts that his trial counsel was ineffective for failing to raise an entrapment defense. Petition at 8; Doc. 1-1 at 7-8. According to Lamb, law enforcement first asked him to produce photographs of underage children. Doc. 1-1 at 7. As such, he claims law enforcement subjectively entrapped him because he was not predisposed to commit a crime prior to the undercover detective's request for child pornography. Id. at 8.

Lamb raised a similar claim in his Rule 3.850 Motion. Resp. Ex. CC at 19. In denying this claim, the circuit court wrote:

> By pleading guilty to the charges, Defendant waived his right to trial and to have counsel investigate or put forward a defense. Defendant may not now seek to present an allegation contrary to his sworn testimony. See Stano, 520 So. 2d at 280.[8] When a defendant enters a plea and declares under oath that he is satisfied with his counsel, he may not attack counsel's effectiveness for failure to investigate or defend a charge in postconviction proceedings. Smith, 41 So. 3d at 1040.[9] "By insisting on pleading guilty . . . [the defendant] render[s] any further investigation pointless." Stano, 520 So. 2d at 280. An argument that counsel is

---

[8] Stano v. State, 520 So. 2d 278 (Fla. 1988).
[9] Smith v. State, 41 So. 3d 1037 (Fla. 1st DCA 2010).

ineffective for failing to conduct an investigation after a
defendant pled guilty is meritless. <u>Smith</u>, 41 So. 3d at 1040.

As detailed *supra* in Defendant's first sub-claim,
Defendant testified he was satisfied with counsel's
representation and further testified he understood the nature
of the rights he waived by pleading guilty. Defendant also
acknowledged that he knowingly and voluntarily signed his
plea agreement. The plea agreement specifically provides for
the waiver of Defendant's right to a jury trial. Thus, Defendant
knowingly, intelligently and voluntarily waived his right to
challenge the State's case. In so doing, Defendant rendered
any further investigation or evidentiary challenge moot.
Accordingly, the record refutes any claim that counsel was
deficient for failing to investigate and raise defenses.
Defendant is not entitled to relief on sub-claim six.

<u>Id.</u> at 313 (record citations and footnote omitted). The circuit court also adopted the State's

response to this claim. <u>Id.</u> The First DCA per curiam affirmed the denial of this claim

without issuing a written opinion. Resp. Ex. FF.

To the extent that the First DCA decided the claim on the merits,[10] the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Lamb is not entitled to relief

on the basis of this claim.

---

[10] Throughout this order, in looking through the appellate court's per curiam
affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate
court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, the claim in Ground Three is without merit. As an initial matter, the Court finds that Lamb has failed to adequately plead prejudice because he does not allege that but for counsel's alleged deficiencies, he would have proceeded to trial instead of accepting the plea. See Hill v. Lockhart, 474 U.S. 52, 60 (1985) (holding that the district court did not err in denying petitioner's federal habeas petition where "[p]etitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial."). Accordingly, Lamb has failed to establish the requisite prejudice needed to receive federal habeas relief on a claim that he involuntarily entered a plea based on ineffective assistance of counsel. Id.

Even if properly pled, this claim is meritless. "A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case," and "[w]hat is said and done at a plea conference carries consequences." Scheele v. State, 953 So. 2d 782, 785 (Fla. 4th DCA 2007). A defendant's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) (holding a court may deny postconviction relief on claims that are refuted by sworn representations the defendant made to the trial court). By entering a guilty plea, a defendant waives any right to have his or her counsel investigate or put forward a defense. Smith, 41 So. 3d at 1040 (citing Davis v. State, 938 So. 2d 555, 557 (Fla. 1st DCA 2006)). Similarly, "[w]here a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge." Id.

By entering his guilty plea, Lamb waived his right to have his counsel investigate and put forward a defense. See id. Additionally, during the plea colloquy here, Lamb stated, under oath, that he had sufficient time to discuss the case with his attorney, counsel answered all his questions, and he was satisfied with his lawyer's services. Resp. Ex. B at 159. Lamb also affirmatively acknowledged he was giving up his right to proceed to a jury trial and to put forward a defense. Id. at 162-63. Based on these sworn representations to the circuit court, Lamb is estopped from arguing his counsel was ineffective for failing to investigate or put forward an entrapment defense. See Blackledge, 431 U.S. at 74; Kelley, 109 So. 3d at 812-13; Smith, 41 So. 3d at 1040.

Moreover, given the facts of this case, entrapment would have been a meritless defense. In Florida, law enforcement commit entrapment:

> if, for the purpose of obtaining evidence of the commission of a crime, he or she induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.

§ 777.201(1), Fla. Stat. Florida recognizes two theories of entrapment, one being "'objective entrapment,' which concerns law enforcement conduct amounting to a denial of due process," and the other being "'subjective entrapment,' which focuses on whether the defendant was predisposed to commit the crime." Jones v. State, 114 So. 3d 1123, 1126 (Fla. 1st DCA 2013). To establish objective entrapment, law enforcement conduct must be so outrageous that it offends decency or a sense of justice. State v. Laing, 182 So. 3d 812, 816 (Fla. 4th DCA 2016). Notably, it is not objective entrapment for law enforcement to set up a sting operation with a decoy child-victim where the decoy enters

a chat room, waits for someone to solicit sexual activity, and allows a defendant to set up a sexual encounter. Bist v. State, 35 So. 3d 936, 940 (Fla. 5th DCA 2010).

Subjective entrapment, on the other hand, is established through a three-part test:

> 1) "whether an agent of the government induced the accused to commit the offense charged[;]" 2) if so, "whether the accused was predisposed to commit the offense charged[;]" and 3) "whether the entrapment evaluation should be submitted to a jury."

Laing, 182 So. 3d at 818-19 (quoting Munoz v. State, 629 So. 2d 90, 99-100 (Fla. 1993)). A defendant must establish the first prong by a preponderance of the evidence, and a court should address the remaining prongs only after a defendant has established the first prong. Id. at 819. A defendant does not establish inducement through demonstrating law enforcement merely solicited or created opportunities to commit crimes. Senger v. State, 200 So. 3d 137, 144 (Fla. 5th DCA 2016) (quoting Marreel v. State, 841 So. 2d 600, 603 (Fla. 4th DCA 2003)). Instead, "[i]nducement is defined as including 'persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship.'" Rivera v. State, 180 So. 3d 1195, 1197 (Fla. 2d DCA 2015) (quoting State v. Henderson, 955 So. 2d 1193, 1195 (Fla. 4th DCA 2007)).

In the case at bar, the arrest and booking report reflects that Charles McMullen, a lieutenant assigned to the cybercrime unit of the Office of the Attorney General of Florida, posed as a fourteen-year old boy in an online chatroom. Resp. Ex. A at 2. On November 30, 2005, Lamb initiated a private chat with McMullen. Id. From that date through March 27, 2006, Lamb and McMullen carried on thirty-five chat sessions, during twenty of which Lamb sent McMullen pictures, including ten sessions in which Lamb sent child

pornography. Id. The arrest and booking report details the dates and content of these images of child pornography. Id. at 2-3. During one chat session, Lamb sent a video of himself masturbating to the undercover officer. Id. at 3. In the last chat session on March 27, 2006, Lamb solicited McMullen for the purpose of performing oral sex on the decoy-victim. Id. at 5-6. Lamb also turned on his webcam to again masturbate in front of the decoy-victim. Id.

At the sentencing hearing, Lamb testified that at first, he sent the decoy-victim photographs depicting adults but eventually the decoy-victim began asking for younger pictures. Resp. Ex. B at 246, 257-58. Within two to five minutes after initiating the initial chat, Lamb knew the victim-decoy purported to be fourteen years old. Id. at 256. Lamb acknowledges that if the record demonstrated it, he was the first to initiate the transmittal of pornography and the first person to initiate conversations about sex. Id. at 258. McMullen's deposition corroborates Lamb's testimony and the fact that Lamb was the first to send pornographic pictures and initiate sexual conversations.

During McMullen's deposition, he testified that at the beginning of their first chat, Lamb asked him if he liked looking at live webcam feeds and eventually Lamb turned on his webcam to give McMullen a live feed. Resp. Ex. C at 8. According to McMullen, by their third chat session, Lamb had not yet sent child pornography but did send pictures of himself and of men eighteen and up. Id. at 11. However, during their third and fourth chats, McMullen asked Lamb if he had any pictures of young boys. Id. Starting with the fourth or fifth chat session, Lamb began sending child pornography. Id. at 12-13.

Based on this record, Lamb cannot demonstrate either objective or subjective entrapment. McMullen's action of posing as a child online does not constitute outrageous

police conduct. See Bist, 35 So. 3d at 940. As such, Lamb could not have established objective entrapment. Turning to subjective entrapment, Lamb initiated contact with the victim-decoy and started the sexual conversation. McMullen's action of requesting child pornography does not establish inducement, as the request was merely a solicitation and did not include any coercive tactics or promises. See Senger, 200 So. 3d at 144; Rivera, 180 So. 3d at 1197. Lamb has failed to establish by a preponderance of the evidence that he was induced into sending child pornography through the internet. As any claim of entrapment would have been without merit, counsel cannot be ineffective for failing to raise a meritless argument. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573.

In light of Lamb's sworn representations to the circuit court, the fact Lamb faced a much stiffer penalty had he proceeded to trial,[11] and the unlikelihood of success of his entrapment defense, the Court finds there is no reasonable probability that Lamb would have foregone his plea deal had counsel investigated and put forward an entrapment defense. Accordingly, Lamb has failed to establish either deficient performance or prejudice. As such, relief on the claim in Ground Three is due to be denied.

### D. Ground Four

Lamb argues that his trial counsel was ineffective for allowing him to enter a plea in front of a circuit court that did not have jurisdiction and a prosecutor without legal authority to prosecute him. Petition at 10; Doc. 1-1 at 9-10. According to Lamb, the Office of Statewide Prosecution (OSP) did not have authority to prosecute his case that "was brought in the name of the local State Attorney." Doc. 1-1 at 9. Lamb contends that the

---

[11] As noted above in the procedural history of this case, the State nolle processed nineteen separate charges on which Lamb would have faced potential sentencing had he proceeded to trial and lost.

local State Attorney's Office should have handled his prosecution. Id. at 9-10. Lamb does

not discuss why he thinks the circuit court did not have jurisdiction. Id.

Lamb raised a similar claim in his Rule 3.850 Motion. Resp. Ex. CC at 18. The

circuit court rejected this claim, explaining:

> Defendant's second sub-claim re-characterizes his
> lack of authority claim as an ineffective assistance of counsel
> claim. For the reasons stated *supra* in Ground One, the
> underlying claim is without merit. An attorney is not ineffective
> for failing to make a meritless objection. Lugo v. State, 2 So.
> 3d 1, 21 (Fla. 2008). Defendant's instant motion fails to
> demonstrate any meritorious basis upon which counsel could
> have challenged Ms. Horkan's authority. Moreover, as
> discussed *supra* in Ground One, any defect in Ms. Horkan's
> authority would not divest the trial court of jurisdiction in
> Defendant's case. Both the trial court and the First District
> Court of Appeal have already considered and rejected
> Defendant's contention that Ms. Horkan lacked authority to
> prosecute Defendant's case. Accordingly, Defendant cannot
> demonstrate he suffered prejudice due to counsel's failure to
> timely challenge Ms. Horkan's authority. Defendant is not
> entitled to relief on sub-claim two.

Id. at 308-09. As to ground one of the Rule 3.850 Motion, the circuit court ruled this claim

against the OSP should have been brought via a petition for writ of quo warranto, a

prosecutor from the Fourth Judicial Circuit signed the Information, Lamb was collaterally

estopped from raising this claim, and that the law of the case doctrine prevented review

of this claim. Id. at 295-96. The First DCA per curiam affirmed the denial without issuing

a written opinion. Resp. Ex. FF.

To the extent that the First DCA decided the claim on the merits, the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Lamb is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim here is meritless. In Florida, jurisdiction is determined solely from the face of the charging document. Black v. State, 819 So. 2d 208, 211 (Fla. 1st DCA 2002) (citations omitted); see also Bolden v. State, 832 So. 2d 153, 156 (Fla. 2d DCA 2002) (Where a prosecutor from the State Attorney's Office in the circuit in which a crime was committed signs a charging document and they later appoint OSP prosecutors to handle the case, a defendant's argument that the OSP lacked jurisdiction is meritless). While Florida law currently provides that any lack of jurisdiction on the part of the OSP does not divest the trial court of subject matter jurisdiction, see Carbajal v. State, 75 So. 3d 258, 262-63 (Fla. 2011), at the time of Lamb's prosecution, controlling law in the First DCA was that such lack of authority did divest the trial court's jurisdiction. See Winter v. State, 781 So. 2d 1111 (Fla. 1st DCA 2001), disapproved of by, Carbajal, 75 So. 3d 258.

Here, however, the record reflects that Jay Taylor, Esq., Assistant State Attorney for the Fourth Judicial Circuit, signed the charging document. Resp. Ex. A at 30. Maureen Horkan was the prosecutor who appeared at hearings and her name is affixed to many of the filings in Lamb's case. Resp. Exs. A; B. Notably, in her filings, Horkan's signature appears above her name and title, which reflects "Assistant State Attorney." Resp. Ex. A at 32-33. Additionally, in some circuit court orders Horkan is reflected in the certificate of service as being a prosecutor with the OSP, id. at 40, while in other orders she is noted

as being an Assistant State Attorney. Id. at 45. From this record, it is unclear whether or not Horkan was an Assistant State Attorney with the Fourth Judicial Circuit's State Attorney's Office or a prosecutor with the OSP. Lamb has failed to provide any independent proof or verification of Horkan as a prosecutor with the OSP. Therefore, on this record, Lamb has failed to satisify his burden of proof. See Blankenship v. Hall, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation."). Moreover, as a prosecutor from the local State Attorney's Office signed the Information, Lamb cannot argue lack of jurisdiction on the part of the circuit court. See Bolden, 832 So. 2d at 156. Therefore, his attorney cannot be deficient for failing to raise a meritless issue. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573.

The Court notes Lamb raised the issue of the prosecutor's lack of authority in his pro se brief on direct appeal. Resp. Exs. X at 9; Y at 8-9. The First DCA denied relief on this claim when it per curiam affirmed Lamb's judgment and sentences. Resp. Ex. Z. Lamb's failure to establish this as error on direct appeal defeats his claim of prejudice in an ineffective assistance of counsel claim. See Chandler v. State, 848 So. 2d 1031, 1046 (Fla. 2003) (noting that if a defendant cannot demonstrate fundamental error on direct appeal, he or she likewise cannot demonstrate prejudice under the Strickland standard). Accordingly, for the above stated reasons, Lamb has failed to establish deficient performance or prejudice; therefore, relief on his claim in Ground Four is due to be denied.

**E. Ground Five**

In Ground Five, Lamb maintains that his trial counsel was ineffective for failing to object to improper prosecutorial comments and evidence presented at his sentencing hearing. Doc. 1-1 at 11-12. According to Lamb, his counsel should have objected to the "introduction of an unauthenticated research article" that discussed the propensity of certain people to molest. Id. at 11. Lamb avers that because there was no actual victim in his case and no allegations of molestation, introduction of this article was irrelevant. Id. Likewise, Lamb states his counsel should have objected when the prosecutor made comments about "victims" when there was no actual victim here. Id. Additionally, Lamb complains that his counsel failed to object when the State introduced text messages and names of people in his chat list that were not associated with the offenses for which he entered a guilty plea. Id. Lamb also contends that his counsel failed to introduce evidence at the hearing to establish that the Department of Corrections was unable to adequately provide mental health treatment for him, something he claims would have aided in his mitigation argument. Id. It appears as though Lamb also argues in Ground Five that the circuit court erred in rejecting the medical testimony Lamb presented when the State failed to present any evidence to rebut that testimony. Id. at 12. Lastly, Lamb asserts that his counsel failed to properly prepare him for the questions the prosecutor asked at the sentencing hearing concerning his propensity to commit a crime again. Id.

Respondents contend that Lamb exhausted his claims that counsel was ineffective for failing to object to the article and for failing to object to the introduction of the chat list. Response at 73-77. However, Respondents assert that Lamb's remaining allegations of ineffective assistance of counsel was not exhausted and should be denied as

procedurally defaulted. Id. at 77-81. In his Reply, Lamb asserts that all of his allegations in Ground Five are exhausted because appellate counsel filed an Anders brief on direct appeal and Florida law requires the First DCA to conduct a de novo review of the proceedings on appeal of the denial of his Rule 3.850 Motion. Reply at 10-11, 17.

In the Anders brief, Lamb's appellate counsel addressed Lamb's allegation that the circuit court erred in ignoring his medical evidence. Resp. Ex. V at 35. Therefore, this claim is exhausted. See Jenkins, 210 F. App'x at 898. However, neither the Anders brief nor Lamb's pro se initial briefs on direct appeal could have exhausted claims of ineffective assistance of counsel, even if raised, because such claims are generally not cognizable on direct appeal in Florida. See Reynolds, 99 So. 3d at 474. Turning to the allegations Lamb raised in his Rule 3.850 Motion, the Court finds that Lamb did raise claims alleging his counsel was ineffective for failing to object to introduction of the research article, and introduction of the chat list, the improper admission of collateral criminal evidence, and counsel's failure to make more specific objections to the prosecutor's comments. Resp. Ex. CC at 19-22. Based on this record, the Court finds that Lamb exhausted all of his ineffective assistance of counsel claims except his claims that counsel was ineffective for (1) failing to submit evidence of the Department of Corrections ability to provide mental health treatment; and (2) counsel's failure to prepare Lamb for cross-examination. These two claims are due to be denied as unexhausted.

As to the ineffective assistance of counsel claims that Lamb did present in his Rule 3.850 Motion, the circuit court denied relief, writing:

> Contrary to Defendant's contention, counsel attempted to discredit and challenge the State's pedophilia article. Specifically, counsel identified the article and elicited testimony from Dr. Neidigh tending to discredit the article's

assertion that child pornography is a valid indicator of pedophilia. Thus, the record refutes Defendant's allegation that counsel was deficient. Moreover, Defendant cannot demonstrate prejudice. The State's sentencing packet included fifty pages of communications between Defendant and the decoy child victim. These fifty pages demonstrate, in graphic detail, the extent of Defendant's various offenses. The pages also include notations and screen-shots illustrating how Defendant exposed and sexually exhibited himself to the decoy victim he believed to be an under-aged child. As such, there is ample record evidence to support Defendant's conviction and sentence regardless of whether the Court considered the pedophilia article during sentencing.

Furthermore, the Court sentenced Defendant in accordance with his very favorable plea bargain. The Court sentenced Defendant to a fifteen-year term of incarceration in accordance with the terms established by Defendant's plea agreement. Defendant's fifteen-year term is fifty years less than the statutory maximum for the five offenses to which Defendant plead [sic]. Furthermore, Defendant's fifteen-year term is 235 years less than the statutory maximum term Defendant faced if convicted at trial of all twenty-four offenses. In light of the overwhelming information provided by the State, the Court finds Defendant cannot demonstrate that any purported deficiency could reasonably be expected to have an effect on Defendant's sentence. Furthermore, the trial Court indicated Defendant's sentence would have been "far worse" had Defendant been convicted at trial. Accordingly, the Court finds no merit in Defendant's contention that counsel's failure to object to the article had any material impact on the sentence rendered by the Court. As such, Defendant cannot demonstrate prejudice sufficient to satisfy the requirements set forth in <u>Strickland</u>. Defendant is not entitled to relief on sub-claim seven.

. . . .

The Court did consider Defendant's medical testimony. The trial judge expressly stated she listened to the testimony of Dr. Pruitt, Dr. Neidigh, Defendant's family members, Defendant's friends, and Defendant himself. The trial judge further acknowledged Defendant's various mental or psychological explanation for his unlawful conduct. As such, the record refutes Defendant's claim that the Court did not

> consider the medical testimony presented at sentencing.
> Defendant is not entitled to relief on sub-claim nine.

Id. at 316 (record citations omitted). The First DCA per curiam affirmed the circuit court's order as to these issues without a written opinion. Resp. Ex. FF.

To the extent that the First DCA decided these claims on the merits, the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Lamb is not entitled to relief on the basis of these claims.

Nevertheless, even if the state appellate court's adjudication of these claims is not entitled to deference and Lamb exhausted all of the remaining claims, Lamb is not entitled to relief. The record reflects that at the sentencing hearing Lamb introduced the testimony of Dr. Michael Pruitt, a psychiatrist, and Dr. Larry Neidigh, a psychologist. Resp. Ex. B at 195-233. Dr. Pruitt testified Lamb suffered from depression and "a fairly severe obsessive-compulsive disorder," for which Dr. Pruitt prescribed medication. Id. at 196-99. Dr. Neidigh testified that Lamb has been undergoing therapy with one of Dr. Neidigh's proteges and Dr. Neidigh testified about child molestation and the causes of it, including propensity to molest. Id. at 206-11. Lamb's counsel discussed the article referenced by Lamb with Dr. Neidigh, with the doctor stating the following:

> I think that that article is a fairly good study that
> demonstrates that there is a pretty strong correlation between
> people looking at child pornography and being sexually

> aroused to children, having sexual arousal to children. It
> demonstrates that connection. And if you are going to talk
> about the DSM-IV diagnosis of pedophilia, the definition is that
> recurring images or desires for prepubescent children that
> cause the person distress or dysfunction in some cases.
>
> So if we were to argue that those people who have
> child pornography are also arrested, we would call that
> dysfunction, then certainly it meets that diagnostic definition
> for pedophilia. But you can't equate -- in terms of that study,
> you can't equate the term pedophilia with child molestation.
> That is not what that article says. The article says that those
> people who have child pornography have sexual arousal to
> images of children and thoughts of children, but it is not proof
> that they molest children.

Id. at 211-12 (emphasis added). Dr. Neidigh further noted that merely possessing child pornography is not a direct indication of someone being a pedophile and other studies indicate that about forty percent of people who possess child pornography go on to actually molest children. Id. at 213-14.

Lamb's own medical expert testified the article was a "fairly good study" and discussed the scientific consensus on the link between possessing child pornography and molestation. Accordingly, any objection to the article would have been meritless. Moreover, the Court finds this evidence was relevant to the question of whether or not Lamb would reoffend or continue to commit criminal acts. See Bracero v. State, 10 So. 3d 664, 665 (Fla. 2d DCA 2009) (noting that trial courts have wide discretion regarding the factors it may consider when imposing a sentence); Roeling v. State, 880 So. 2d 1234, 1240 (Fla. 1st DCA 2004) (holding "the state has carried its burden to demonstrate by the greater weight of the evidence that expert opinion testimony regarding propensity to commit acts of sexual violence in the future which is based in part on use of the RRASOR, Static–99 and MnSOST–R risk-assessment instruments satisfies the Frye test."); see also

<u>Miller v. State</u>, 42 So. 3d 204, 226 (Fla. 2010) ("Even if a defendant has pled guilty to a lesser offense, the trial court may allow the State to present evidence that demonstrates a greater offense."). Notably, Dr. Neidigh opined that Lamb was "a medium, medium low risk category" to be a danger to children in the future. <u>Id.</u> As such, even without the article, the circuit court had evidence to consider Lamb's propensity for future criminal sexual conduct against minors.

The record refutes Lamb's contention that counsel failed to object to the introduction of other chats and other accounts with which Lamb interacted, as counsel did in fact do so, arguing the State did not disclose the information and the authenticity of it had not been verified. <u>Id.</u> at 254, 267. And, in fact, the circuit court sustained the objection, stating "I haven't even looked at it and I won't consider it." <u>Id.</u> at 267. Concerning comments about there being a victim, the circuit court specifically found this was not a victimless crime. <u>Id.</u> at 274. Therefore, the circuit court would not have sustained an objection to the prosecutor's comments concerning a victim, and, therefore, counsel cannot be deficient for failing to raise an objection that would not have succeeded. Regarding Lamb's medical evidence, the circuit court did in fact consider it but rejected it as an explanation for his criminal behavior. <u>Id.</u> at 274-75. Notably, the circuit court stated to Lamb's attorney that "I can assure you that had this gone to trial and I had heard what I had heard here, the sentence would have been far greater." <u>Id.</u> at 276. The circuit court's statement here establishes that there is no reasonable probability the outcome of the sentencing proceeding would have been different even if counsel had done everything Lamb alleges, he should have done during the hearing. Based on the above, the Court finds the record refutes several of Lamb's contentions, he cannot

demonstrate prejudice, and counsel cannot be ineffective for raising meritless challenges. As such, Lamb is not entitled to relief on the claims he raised in Ground Five.

## F. Ground Six

In Ground Six, Lamb argues that the circuit court violated his right to due process when it failed to hold an evidentiary hearing on the claims he raised in his Rule 3.850 Motion. Doc. 1-1 at 13-14. As state procedural rules control the entitlement to an evidentiary hearing under Rule 3.850, this Court cannot address the propriety of that action in a federal habeas proceeding. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."). Accordingly, relief on the claim in Ground Six is due to be denied.

## G. Ground Seven

Lastly, Lamb contends that "[t]he accumulation of errors in this case violated petitioner's right to due process." Doc. 1-1 at 14. The Court notes that where all individual claims are meritless, the claim of cumulative error is also without merit. Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). As explained above, each of Lamb's individual claims for relief fails; therefore, it follows that his claim of cumulative error is also without merit. See id. Accordingly, the claim in Ground Seven is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Lamb seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Lamb "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Lamb appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of October, 2019.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:      Bradley R. Lamb #J34530
        Bryan G. Jordan, Esq.